IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Patrick Asuwafo Ejedawe,<br><br>    Petitioner,<br><br>vs.<br><br>Phillip Crawford, et al.,<br><br>    Respondents. | No. CV 06-2708-PHX-SMM (ECV)<br><br>**REPORT AND RECOMMENDATION** |

TO THE HONORABLE STEPHEN M. MCNAMEE, UNITED STATES DISTRICT JUDGE:

Pending before the court is Petitioner's Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2241. Doc. #1.

**FACTUAL AND PROCEDURAL BACKGROUND**

Petitioner, who is a native and citizen of Nigeria, first entered the United States in 1983 with an F-1 non-immigrant visa. Doc. #14 at 2. Petitioner subsequently became a lawful permanent resident in 1987. Doc. #14, Exh. 2. In March 2000, Petitioner pled guilty in the Central District of California to Conspiracy, in violation of 18 U.S.C. § 371 and was sentenced to 15 months in prison. Doc. #14, Exh. 7. Based on the conviction, the former Immigration and Naturalization Service initiated removal proceedings against Petitioner. Doc. #14, Exh. 8. He was removed from the United States to Nigeria on September 29, 2001. Doc. #14, Exh. 12.

Petitioner reentered the United States in May 2002 using a passport issued to him in Nigeria under a different name. Doc. #14, Exh. 13. On January 26, 2004, Petitioner pled guilty in the Central District of California to Conspiracy to Commit Access Device Fraud and Bank Fraud in violation of 18 U.S.C. §§ 371, 1029(a)(5) and 1344. Doc. #14, Exh. 14. He was sentenced to the Bureau of Prisons for ten months to be followed by a three year term of supervised release.[1] Id.

Based on his unlawful reentry in 2002, the Department of Homeland Security (DHS) served Petitioner on December 30, 2004, with a Notice of Intent to Issue a Final Administrative Removal Order. Doc. #14, Exh. 22. DHS then issued the Final Administrative Removal Order on January 11, 2005. Doc. #14, Exh. 24. Respondents contend that Petitioner was taken into custody on December 30, 2004, the date he was served with the notice, though Petitioner states in his petition that he was taken into custody on January 13, 2005. Both parties agree he has been in custody continuously since one of those two dates.

After the final removal order was issued, Petitioner sought withholding of removal under § 241(b)(3) of the Immigration and Nationality Act (8 U.S.C. § 1231(b)(3)) and under the United Nations Convention Against Torture. Those requests were denied by an Immigration Judge on May 12, 2005. Doc. #14, Exh. 30, 31. The Judge further ordered that the government be allowed to enforce its administrative removal order. Doc. #14, Exh. 30. Petitioner then filed an appeal to the Board of Immigration Appeals, which was denied on March 28, 2006. Doc. #14, Exh. 38.

---

[1] Respondents further contend that on March 4, 2004, Petitioner pled guilty to Conspiracy, in violation of 18 U.S.C. § 371, and was sentenced to 12 months and one day in prison. A close reading of the record, however, shows that the prison term imposed relates back to the Conspiracy conviction in 2000. Doc. #14, Exh. 15. The case was back before the court on a Petition for Revocation of Supervised Release. Id. Petitioner violated the terms and conditions of the previously imposed Judgment and Commitment Order and was sentenced to prison as a result. Id. Respondents' contention that he pled guilty to a new charge of conspiracy is inaccurate.

- 2 -

The Ninth Circuit docket shows that Petitioner filed a Petition for Review on April 20, 2006. The court issued a temporary stay of removal pending further order. On June 13, 2007, the court denied the Petition for Review. Ejedawe v. Gonzales, 234 Fed.Appx. 594, 2007 WL 1725704. On February 1, 2008, the court denied Petitioner's petition for panel rehearing and petition for rehearing en banc. The docket further reflects that Petitioner filed a petition for certiorari in the United State Supreme Court on February 8, 2008. That petition is still pending.[2]

Petitioner filed his *pro se* Petition for Writ of Habeas Corpus in this court on November 13, 2006. Doc. #1. Petitioner alleges that since January 13, 2005, he has been held in custody by Immigration and Customs Enforcement without bond or an order of supervised release. Doc. #1 at 5. He contends that his lengthy detention while his removal proceedings have been pending is unlawful. He asks the court to order him released on bond or under supervision.

On May 23, 2007, Respondents filed a Response in Opposition to Petition for Writ of Habeas Corpus, in which they contend that Petitioner's current detention is lawful because he is subject to mandatory detention under 8 U.S.C. § 1226(c). Doc. #14 at 6. On June 25, 2007, Petitioner filed a Reply. Doc. #16. On October 23, 2007, Petitioner filed a Motion for Leave to File Supplemental Exhibits in Support of Petition for Writ of Habeas Corpus. Doc. #17. That motion will be addressed in a separate order filed concurrently with the Report and Recommendation.

---

[2] The court has been waiting for the mandate to issue following the Ninth Circuit decision in June 2007. Upon issuance of the mandate, Petitioner would be subject to detention under 8 U.S.C. § 1231(a) based on a final order of removal, rather than under 8 U.S.C. § 1226(c), the provision under which he is currently being held. However, in light of Petitioner's requests for rehearing and his petition for certiorari, the mandate has not issued. The court will therefore determine whether continued detention under § 1226(c) is permitted.

- 3 -

**DISCUSSION**

**A.     Legal Standards**

It is clearly established that the Fifth Amendment entitles aliens to due process of law in removal proceedings. Reno v. Flores, 507 U.S. 292, 306 (1993). In Zadvydas v. Davis, 533 U.S. 678 (2001), the Supreme Court examined the detention of aliens after entry of a final removal order. Generally, the Government is required to remove an alien in its custody within ninety days of the final removal order. See 8 U.S.C. § 1231(a)(1)(A)-(B). The Government may, however, detain an inadmissible or criminal alien beyond the statutory removal period. 8 U.S.C. § 1231(a)(6). But the Government's ability to detain an alien under this provision is not unlimited. Zadvydas, 533 U.S. at 699. To avoid a "serious constitutional threat," the Supreme Court interpreted the post-removal-period detention statute to prohibit continued detention "once removal is no longer reasonably foreseeable...." Id. Detention of an alien subject to a final order of removal for up to six months is presumptively reasonable given the time needed to accomplish the removal. Id. at 701. "After this 6-month period, once the alien provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, the Government must respond with evidence sufficient to rebut that showing." Id. at 701.

In Demore v. Kim, 538 U.S. 510 (2003), the Court addressed the detention of criminal aliens while removal proceedings are ongoing but before the statutory removal period begins. 8 U.S.C. § 1226(c) mandates detention during removal proceedings for deportable aliens convicted of an aggravated felony. Demore, 538 U.S. at 517-18. "Such detention necessarily serves the purpose of preventing deportable criminal aliens from fleeing prior to or during their removal proceedings, thus increasing the chance that, if ordered removed, the aliens will be successfully removed." Id. at 528. Detention of a criminal alien during removal proceedings is, therefore, a constitutional part of the process. Id. at 531.

In Demore, however, the Court operated on the assumption that the period of detention under § 1226(c) is relatively short. See id. at 528-29. In distinguishing the potentially lengthy periods of detention at issue in Zadvydas, the Court stated:

> Under § 1226(c), not only does detention have a definite termination point, in the majority of cases it lasts for less than the 90 days we considered presumptively valid in *Zadvydas*. The Executive Office for Immigration Review has calculated that, in 85% of the cases in which aliens are detained pursuant to § 1226(c), removal proceedings are completed in an average time of 47 days and a median of 30 days. Brief for Petitioners 39-40. In the remaining 15% of cases, in which the alien appeals the decision of the Immigration Judge to the Board of Immigration Appeals, appeal takes an average of four months, with a median time that is slightly shorter. *Id.*, at 40.
>
> These statistics do not include the many cases in which removal proceedings are completed while the alien is still serving time for the underlying conviction. *Id.,* at 40, n. 17. In those cases, the aliens involved are never subjected to mandatory detention at all. In sum, the detention at stake under § 1226(c) lasts roughly a month and a half in the vast majority of cases in which it is invoked, and about five months in the minority of cases in which the alien chooses to appeal.

Demore, 538 U.S. at 529-30 (footnotes omitted). The alien in Demore had been held for six months, which the Court, although acknowledging was "somewhat longer than the average," found constitutionally permissible. Id. at 530-31.

Despite the mandatory language of § 1226(c), it is "constitutionally doubtful" that Congress has the authority to imprison for excessively long periods lawfully admitted criminal aliens who are subject to removal. Tijani v. Willis, 430 F.3d 1241, 1242 (9th Cir. 2005). In Tijani, the alien had "been deprived of his liberty by the government for a period of over two years and eight months." Id. The court avoided deciding the constitutional issue, but interpreted "the authority conferred by § 1226(c) as applying to expedited removal of criminal aliens." Id. Because the alien's proceedings were not expeditious, the court remanded the case to the district court to grant the habeas petition unless the government provided the alien a bail hearing before an Immigration Judge. Id.

**B.     Application**

Respondent contends, and Petitioner does not dispute, that Petitioner, given his status as a criminal alien whose removal proceedings are still pending, is being held under § 1226(c). Because a stay of removal is in place and the mandate has not been issued by the Ninth Circuit, Petitioner's removal period under § 1231(a)(1) has not yet begun. Nor will it begin unless and until the Supreme Court denies the pending petition for certiorari.

- 5 -

1    Respondent argues that this case is distinguishable from Tijani because here,
2 Petitioner is not a lawful permanent resident. Doc. #14 at 7. Respondent contends that
3 although Petitioner may have been a lawful permanent resident in the past, the execution of
4 his final order of removal in 2001 terminated his legal status. Id. After being deported,
5 Petitioner unlawfully reentered the United States by using a passport with a fraudulent name.
6 Id. As a result, Petitioner was subjected to expedited administrative removal proceedings
7 without a hearing before an Immigration Judge. Doc. #14, Exh. 22.

8    Petitioner maintains that his prolonged detention violates his rights under the Due
9 Process Clause of the Fifth Amendment. Doc. #16 at 11-12. He claims that detention under
10 § 1226(c) may not continue indefinitely and that the lengthy duration of his detention
11 exceeds the standards set forth in Tijani and Demore.

12    The court agrees with Respondents and finds that Petitioner's case is distinguishable
13 from and should be decided differently than Tijani. Unlike the petitioner in Tijani and
14 Demore, Petitioner here is not a lawfully admitted resident. The court in Tijani specifically
15 referred to "lawfully admitted resident aliens who are subject to removal" when it concluded
16 that their prolonged detention was not authorized by § 1226(c). 430 F.3d at 1242.
17 Petitioner's unlawful reentry into the United States and subsequent administrative removal
18 order puts him in a different category than a lawfully admitted resident awaiting removal.
19 Moreover, Petitioner committed another felony after he reentered. Under these
20 circumstances, the court finds that continued detention under § 1226(c) is warranted.

21    Lastly, it is important to note that although Petitioner is certainly entitled to seek
22 review of his removal order in the Ninth Circuit and in the Supreme Court, the length of his
23 detention is directly attributable to his requests for review. "[C]ourts must be sensitive to the
24 possibility that dilatory tactics by the removable alien may serve not only to put off the final
25 day of deportation, but also to compel a determination that the alien must be released because
26 of the length of his incarceration." Ly v. Hansen, 351 F.3d 263, 272 (6th Cir. 2003). Thus,
27 while a removable alien is certainly entitled to file appeals and seek any form of relief
28 available to him, courts should consider the role of the alien in causing delays. Id. Without

- 6 -

1 such consideration, removable aliens would be encouraged "to raise frivolous objections and
2 string out the proceedings in the hopes that a federal court will find the delay 'unreasonable'
3 and order their release." Id.

4     Petitioner filed his petition for review in the Ninth Circuit more than two years ago
5 in April 2006. The Ninth Circuit decided the case almost a year ago, in June 2007.
6 Petitioner, however, then moved for a panel rehearing and rehearing en banc, which was
7 denied in February 2008. Now, Petitioner has filed a certiorari petition in the Supreme
8 Court, which remains pending. Thus, Petitioner's ongoing challenges to his administrative
9 removal order have contributed substantially to the length of his detention. While not
10 dispositive, Petitioner's appeals further support the court's conclusion that continued
11 detention in this case is warranted while Petitioner's removal is pending.

12 **IT IS THEREFORE RECOMMENDED:**

13     That the Petition for Writ of Habeas Corpus (Doc. #1) be **denied and dismissed**
14 **without prejudice**;

15     This recommendation is not an order that is immediately appealable to the Ninth
16 Circuit Court of Appeals. Any notice of appeal pursuant to Rule 4(a)(1), Federal Rules of
17 Appellate Procedure, should not be filed until entry of the district court's judgment. The
18 parties shall have ten days from the date of service of a copy of this recommendation within
19 which to file specific written objections with the Court. See, 28 U.S.C. § 636(b)(1); Fed. R.
20 Civ. P. 6(a), 6(b) and 72. Thereafter, the parties have ten days within which to file a
21 response to the objections. Failure to timely file objections to the Magistrate Judge's Report
22 and Recommendation may result in the acceptance of the Report and Recommendation by
23 the district court without further review. See United States v. Reyna-Tapia, 328 F.3d 1114,
24 1121 (9th Cir. 2003). Failure to timely file objections to any factual determinations of the
25 ///
26 ///
27
28

Magistrate Judge will be considered a waiver of a party's right to appellate review of the findings of fact in an order of judgement entered pursuant to the Magistrate Judge's recommendation.  <u>See</u> Fed. R. Civ. P. 72.

DATED this 28th day of April, 2008.

_____
Edward C. Voss
United States Magistrate Judge